# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**ISIDRO FUENTES-MONGE**,

    Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Acting commissioner of Social Security,

    Defendant.

Civil No. 15-3027 (BJM)

## OPINION AND ORDER

Plaintiff Isidro Fuentes Monge ("Fuentes") seeks judicial review of the decision of the defendant, Carolyn W. Colvin, Commissioner of the Social Security Administration ("Commissioner"), disallowing disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C §§ 416(i) and 423(d) (the "Act"). Docket No. 1. Fuentes requests that the judgment be reversed and prays for an order awarding disability benefits. Docket No. 1. Fuentes filed a memorandum of law in support of his position. Docket No. 16, hereinafter "Pl. Mem." The Commissioner answered the complaint, Docket No. 14, and filed a memorandum of law in support of her decision. Docket No. 21, hereinafter "Def. Mem." This case is before me on consent of the parties. Docket No. 8. After careful review, the Commissioner's decision is affirmed.

## LEGAL STANDARD

The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro* v. *Sec'y of Health & Human Servs.,* 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen* v. *Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Da Rosa* v. *Sec'y*, 803 F.2d 24, 26 (1st Cir. 1986); *Ortiz* v. *Sec'y*,

955 F.2d 765, 769 (1st Cir. 1991). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán* v. *Sec'y*, 819 F.2d 1, 3 (1st Cir. 1987). Written reports submitted by non-examining physicians who merely reviewed the written medical evidence are not substantial evidence, although these may serve as supplementary evidence for the Commissioner to consider in conjunction with the examining physician's reports. *Irizarry-Sanchez* v. *Comm'r*, 253 F. Supp. 2d 216, 219 (D.P.R. 2003).

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). In determining whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a)(3).

The Commissioner must employ a five-step evaluation process to decide whether a claimant is disabled. 20 C.F.R. § 404.1520; *see Bowen* v. *Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote* v. *Sec'y*, 690 F.2d 5, 6-7 (1st Cir. 1982). In step one, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At step three, the Commissioner must decide whether the claimant's impairment is equivalent to an impairment already determined to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, he is conclusively presumed to be disabled.

At step four, the Administrative Law Judge ("ALJ") determines whether the impairment prevents the claimant from performing the work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform this work, the fifth and final step asks whether the claimant is able to perform other work available in the national economy in view of his residual functional capacity ("RFC"), as well as age, education, and work experience. If the claimant cannot, then he is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

The burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See Bowen*, 482 U.S. at 146-47 n.5. At steps one through four, the claimant has the burden of proving that he cannot return to his former employment because of the alleged disability. *Santiago* v. *Sec'y*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden under step five to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz* v. *Sec'y*, 890 F.2d 520, 524 (1st Cir. 1989).

## FACTUAL AND PROCEDURAL BACKGROUND

Fuentes was born in 1971. (Transcript ["Tr."] 24). He has worked as a patient transporter, security guard, messenger, and delivery driver in the past. (Tr. 88, 221). Fuentes claims to disabled and unable to work since November 1, 2010, his alleged onset date, due to diabetes, high blood pressure, poor circulation, back pain, inflammation in legs and hands, ulcers on both legs, fatigue, sleep apnea, morbid obesity, and thyroid complications. (Tr. 18, 212-13). He has not worked since November 2010. (Tr. 18). Fuentes had insurance through December 31, 2015. (Tr. 16, 231). He applied for disability and disability insurance benefits on December 9, 2011. (Tr. 16, 25, 238). His claim was initially denied on June 29, 2012, (Tr. 16, 66), and upon reconsideration on April 4, 2013. (Tr. 16, 73). A hearing before an ALJ was held on April 21, 2014, in which Fuentes, represented by counsel, appeared and testified. (Tr. 16). On May 22, 2014, the ALJ concluded that Fuentes has the "following

severe impairments: hypertension, diabetes mellitus II, diabetic neuropathy, asthma, and extreme obesity" but did not have a disability within the meaning of the Social Security Act. (Tr. 16, 18). Fuentes filed a request for a review of the ALJ's decision with the Appeals Council. (Tr. 8). On October 6, 2015, the Appeals Council denied review and affirmed the ALJ's decision. (Tr. 1-5).

*Medical History*

On August 4, 2010, Fuentes saw his primary physician, Dr. Frankie T. Medina-Figueroa ("Dr. Medina"), complaining of a cough. (Tr. 483). Dr. Medina's report assessed Fuentes with acute bronchitis as well as "acute rhinitis, cough, morbid obesity, body mass index ("BMI") 40 and over, adult, hypertension, diabetes mellitus type 2 with peripheral circulatory disease, not stated as uncontrolled, peripheral antipathy in diseases classified elsewhere, hypothyroidism, migraine headache." (Tr. 484). Fuentes had a BMI of 45.2 and blood pressure ("BP") of 140/100. (Tr. 483). Fuentes denied feeling depressed. (Tr. 483). Dr. Medina instructed Fuentes on "the importance of adhering to an exercise regimen involving 30-90 minutes, 5-7 days per week . . . Combination of weight training and aerobic activity preferred." (Tr. 484-85).

Fuentes saw Dr. Medina for a routine evaluation in October 2011. (Tr. 479). His chief complaint was "not feeling too well and . . . general malaise and discomfort associated with current conditions." (Tr. 479). Dr. Medina reported that Fuentes was "anxious, restless, in acute distress." (Tr. 479). Fuentes had a BMI of 45.9 and BP of 150/100. (Tr. 479). Dr. Medina's assessment contained the same complications as the August 2010 report, as well as back pain. (Tr. 480). Dr. Medina instructed "cardiovascular exercise: Encouraged regular aerobic exercise such as walking, running, swimming, or cycling, at least 30 minutes a day, as tolerated." (Tr. 480). Fuentes was referred to a dietitian for "diet, exercise, and behavior modification." (Tr. 480).

In November 2011, Fuentes went to Dr. Medina for a follow-up evaluation and had "no complaints or concerns." (Tr. 471). Fuentes reported symptoms of fatigue, and Dr.

Medina described Fuentes's general appearance as "sleepy, with pain, weak." (Tr. 471). Fuentes reported symptoms of depression. (Tr. 471). His BMI was 43.6, BP 140/90. (Tr. 471). Dr. Medina's assessment was "diabetes mellitus type 2 with neurological manifestations, uncontrolled, peripheral autonomic neuropathy in disorders classified elsewhere, diabetes mellitus type 2 w/ peripheral circulatory disease, uncontrolled, peripheral angiopathy in diseases classified elsewhere, gastroesophageal reflux disease or GERD, endogenous depression, recurrent episode, sleep disturbance, sleep apnea, morbid obesity, BMI 40 and over, adult, hypertension, hypothyroidism, migraine headache." (Tr. 472). Dr. Medina referred Fuentes to an endocrinologist, a pulmonologist, and a psychiatrist. (Tr. 472). Dr. Medina again encouraged Fuentes to do regular aerobic exercise for at least 30 minutes a day. (Tr. 472). Fuentes returned to Dr. Medina's office for a follow-up on November 17, with "no complaints or concerns at present." (Tr. 468). Fuentes denied having symptoms such as fatigue or depression. (Tr. 468). He was "referred to Social Security Administration for further evaluation." (Tr. 469.)

Fuentes first visited his treating endocrinologist, Dr. Angel L. Solla-Velez ("Dr. Solla"), on November 21, 2011. (Tr. 517). Dr. Solla completed an endocrine system medical report that is handwritten and largely illegible. (Tr. 517). Fuentes last saw Dr. Solla on January 7, 2012. (Tr. 517). Dr. Solla reported that Fuentes's condition reached its current level on "11/11." (Tr. 517). Dr. Solla checked boxes saying that Fuentes did not have chronic heart failure, but did have recurrent episodes of diabetic acidosis, peripheral-vascular disease, and symptoms of diabetic neuropathy. (Tr. 518-19).

On December 6, 2011, Fuentes saw Dr. Ferrer-Torres ("Dr. Ferrer"). (Tr. 494). Dr. Ferrer's forms are in Spanish and/or his handwriting is illegible. (Tr. 493-97). Dr. Ferrer referred Fuentes to SleepLab for an evaluation of his "sleep disordered breathing." (Tr. 167). Fuentes was diagnosed with "severe obstructive sleep apnea" on January 7, 2012, after undergoing testing at Sleeplab. (Tr. 167). It was recommended that Fuentes "avoid

driving or operating heavy machinery until treatment is started" and to start using CPAP. (Tr. 167).

Fuentes went to CDT of Canovanas's emergency room on January 12, 2012, with "pain in the back [illegible] HBP." (Tr. 153). An EKG was ordered. (Tr. 153). Fuentes's heart had a regular rate and rhythm, and he was discharged the same day. (Tr. 153).

Fuentes went to the emergency room of HIMA San Pablo Fajardo on January 28, 2012, with an abscess on his back. (Tr. 144). He arrived by walking and was described as "alert, conscious, oriented in the three spheres, active." (Tr. 144). Fuentes reported have "AGUDO" pain and that nothing alleviated the pain. (Tr. 144-45).

On January 30, 2012, Fuentes went to a follow-up appointment with Dr. Medina and had "no complaints or concerns at present." (Tr. 463). He denied having symptoms of fatigue, depression, or sleep problems. (Tr. 463-64). Dr. Medina described him as "alert, cooperative, well-nourished, well-developed, and in no active distress." (Tr. 464).

Hospital San Francisco took X-rays of Fuentes's chest, lumbosacral spine, and cervical spine on April 22, 2012. (Tr. 521-22). The X-ray of his cervical spine found "straightening of the normal cervical curvature which may be due to positioning versus spasm." (Tr. 522). The lumbosacral spine X-ray found "no evidence of an acute fracture or subluxation" and the chest X-ray found "no evidence of an acute cardiopulmonary process." (Tr. 522, 524). Also on April 22, Fuentes saw Dr. Miguel F. Godreau Negron ("Dr. Godreau"). (Tr. 526). Fuentes claimed "feeling unable to work due to legs swelling, pain up the perineal area, not [sic] radiating low back pain, sleepy state, and chest pain (sternal, not radiating, lasting from seconds to hours when moving arms and stabbing in nature)." (Tr. 526). During the physical examination Dr. Godreau found Fuentes "well developed, obese, alert, oriented, cooperative, well dressed, rt. handed, gait is normal." (Tr. 527). Dr. Godreau's assessment was: "obesity, sleep apnea, narcolepsy, dyslipidemia, hypothyroidism, arterial hypertension, IDDM." (Tr. 528). Dr. Godreau found that the "activities that this patient can do are: sitting, standing, walking, lifting and carrying and

handling objects, speaking and traveling." (Tr. 528). Dr. Godreau also included a range of motion chart; Fuentes had a normal range of motion on everything tested. (Tr. 529-30). No hand limitations were found. (Tr. 532).

On June 18, 2012, Dr. Eileen Zayas ("Dr. Zayas"), a consulting physician, completed a case analysis form. (Tr. 21, 535). In the analysis, the alleged impairments were "diabetes, high blood pressure, pain of back, inflammation in both legs and hands, fatigue 8, sleep apnea, morbid obesity 10, thyroids." (Tr. 535). The physical exam was unremarkable. (Tr. 535). Dr. Zayas found that Fuentes had severe impairments (obesity and sleep-related breathing disorders) as well as non-severe impairments (thyroid gland, all disorders, essential hypertension, and diabetes mellitus). (Tr. 542). Dr. Zayas did not find Fuentes's statements credible regarding his symptoms, explaining "claimant refes [sic] that is able to walk 15 minutes but the evidence does not support the amount of time alleged, for which is not credible." (Tr. 543). Fuentes was found to have exertional limitations and that he could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. (Tr. 543-544). Dr. Zayas determined that Fuentes can stand and/or walk 6 hours in a normal 8-hour work day and sit for about 6 hours in an 8 hour-hour work day. (Tr. 544). Dr. Zayas found that Fuentes has an environmental limitation that he should avoid even moderate exposure to hazards. (Tr. 544). This means Fuentes should avoid driving, moving machinery, unprotected heights, and cutting instruments. (Tr. 544). Dr. Zayas determined that Fuentes's RFC classification is light. (Tr. 546). Based on the medical evidence, Dr. Zayas determined that Fuentes was not disabled. (Tr. 547). This report was adopted by another doctor in late June 2012. (Tr. 548). Dr. Osvaldo Rivera ("Dr. Rivera"), a State Agency physician, reviewed the record on February 27, 2013, and affirmed Dr. Zayas's June 2012 assessment as written. (Tr. 18, 573). Dr. Rivera did not find any evidence in the file suggesting that Fuentes's condition had worsened. (Tr. 573).

Fuentes returned to Dr. Medina for a routine evaluation in July 2012, reporting "not feeling too well and complain[ing] of general malaise and discomfort associated with

current conditions." (Tr. 551). Dr. Medina found Fuentes "alert, cooperative, well-nourished, well-developed, and in no acute distress." (Tr. 551). In Dr. Medina's assessment, in addition to conditions already listed above in previous visits, Fuentes had asthmatic bronchitis, cough variant asthma, and protein calorie malnutrition. (Tr. 552).

Fuentes saw Dr. Edna Griselle Melendez Reyes ("Dr. Melendez") in August 2012, but her report is handwritten and largely illegible. (Tr. 554-6). The report has boxes checked that Fuentes was alert, oriented, not in distress, and obese. (Tr. 555).

Complaining of testicular pain and loss of libido, Fuentes went to Dr. Rafael J. Carillo Carambot ("Dr. Carillo") in October 2012. (Tr. 561). Dr. Carillo found Fuentes alert, oriented in time, place and person, and without distress. (Tr. 561). Dr. Carillo did not find anything abnormal. (Tr. 562).

Fuentes again went to Dr. Medina for a routine evaluation in June 2013, and had "no complaints or concerns at present." (Tr. 604). Fuentes denied having symptoms of fatigue and was "alert, cooperative, well-nourished, well-developed, and in no acute distress." (Tr. 604). Dr. Medina once again recommended regular aerobic exercise for at least 30 minutes a day. (Tr. 605). In October, Dr. Medina assessed that, in addition to the conditions listed above in previous visits, Fuentes had pinguicula, astigmatism, myopia, pigmented nevus of skin of eyelid, open angle with borderline findings, and screened for glaucoma. (Tr. 609). Dr. Medina repeated his instructions for regular exercise. (Tr. 609).

Fuentes went, via ambulance, to HIMA San Pablo Fajardo's emergency room in December 2013, complaining of "numbness on left side of the face and headache for past 4 days." (Tr. 210). He was described as "alert, conscious and oriented." (Tr. 210). He had acute, persistent pain that was continuous and reported that nothing helped relieve the pain. (Tr. 210). A CT scan was performed with normal results. (Tr. 618).

### *Fuentes's Testimony*

The ALJ took the testimony of Fuentes during the hearing. (Tr. 33). Fuentes testified that he stopped working because of "great pain in my body and in my joints" and that the

movements that cause him trouble are bending, turning around, agility, and grabbing objects with his hands. (Tr. 36-7). Fuentes testified that he can remain sitting comfortably for only 20 seconds to half an hour; after that he has back contractions and it becomes hard to move. (Tr. 37). Asked why he has not tried to find another kind of work, Fuentes testified, "because the pain and what I feel in my body makes me feel that I am not capable to perform a job with the efficiency it deserves." (Tr. 39).

*Medical Expert Testimony*

The ALJ took the testimony of a medical expert, Dr. Anaya, during the hearing. (Tr. 40). Dr. Anaya's diagnosis was that Fuentes has sleep apnea, diabetes, high cholesterol, diabetic neuropathy, asthma, and obesity. (Tr. 40-41). Dr. Anaya testified that Fuentes has no limitations in his hands. (Tr. 41). It was Dr. Anaya's opinion that Fuentes did not qualify for any listing. (Tr. 42). Dr. Anaya opined that Fuentes's limitations started on October 25, 2011, (Tr. 42), and were: occasionally lift, carry, push and pull 20 pounds, frequently 10 pounds, remain seated for 6 hours, stand for 4 hours because of his morbid obesity, occasionally climb scaffolds, frequently balance, occasionally kneel, stoop, crouch, and crawl, occasionally be exposed to pulmonary irritants, and never be exposed to unprotected heights or extreme heat or cold. (Tr. 43-5).

*Vocational Expert Testimony*

The ALJ took the testimony of an impartial vocational expert ("VE"), Dr. Puig, during the hearing, posing several hypothetical questions. (Tr. 45). The ALJ first told the expert to assume an individual with the same age, vocational profile, work experience, and education as Fuentes, and who "is able to lift and carry, push and pull 20 pounds occasionally, ten frequently. Can remain seated for six hours during a period of eight hour working day with normal breaks and standing and/or walking four hours in that period." (Tr. 46). The VE testified that under those conditions, this individual could not perform Fuentes's former work, but that he could work as an inspector of missing parts, a sorter or classifier, or a ticketer. (Tr. 47). Next, the ALJ asked the VE to imagine the same

hypothetical person with postural limitations of being able to occasionally climb ladders and ropes, occasionally stoop and kneel, and frequently balance. (Tr. 47). The VE opined that that person could perform the same jobs as stated before. (Tr. 47). In the third hypothetical, the ALJ asked the VE to imagine the same hypothetical person with the same postural limitations, but in addition the person could never be exposed to unprotected heights, never be exposed to extreme heat or cold, occasionally could be exposed to humidity, wetness, and could occasionally be exposed to pulmonary irritants. (Tr. 47). The VE answered that this hypothetical person could perform the same three jobs as originally listed. (Tr. 48). Lastly, the ALJ asked the VE to imagine a hypothetical person with the same experiences as Fuentes, who can remain seated for a period of half an hour and who can stand or walk for only three minutes before having to rest for a period of ten minutes. (Tr. 48). The VE answered that there was no work that this hypothetical person could perform. (Tr. 48).

Fuentes's attorney asked one question of the VE: "Dr. Puig are these jobs you mentioned as alternate of labor?" (Tr. 48.) The VE answered that "they're all labor, but they're not mechanically passed. They are not structured to measure production." (Tr. 48).

*Written ALJ Opinion*

The ALJ determined that Fuentes was insured through December 31, 2015. (Tr. 18). At step one of the disability analysis, the ALJ found Fuentes had not engaged in substantial gainful activity since November 1, 2010, the alleged onset date. (Tr. 18). At step two, the ALJ found that Fuentes had "the following severe impairments: hypertension, diabetes mellitus II, diabetic neuropathy, asthma, and extreme obesity." (Tr. 18). At step three, the ALJ found no listing level impairment. (Tr. 19).

In the RFC analysis, the ALJ determined that prior to October 24, 2011, Fuentes had no limitations. (Tr. 19). From October 25, 2011, the ALJ found that he had the RFC to "perform light work as defined in 20 CFR 404.1567(b)" with limitations of occasionally lifting 20 pounds, sit 6 hours in an 8-hour workday, stand 4 hours in an 8-hour workday,

and never be exposed to unprotected heights or extreme temperatures. (Tr. 19). The ALJ found that Fuentes's medically determinable impairments "could reasonably be expected to cause the alleged symptoms," but discredited Fuentes's statements concerning the intensity and limiting effects. (Tr. 20). The ALJ explained that even though Fuentes has severe impairments, "the medical evidence fails to document worsening of any of his conditions" and that "[t]he claimant has not required frequent emergency room visits or hospitalizations due to the exacerbation of his asthma. Although the claimant has hypertension, it has been well controlled with prescribed treatment. There is no evidence of end or organ damage or any other cardiovascular condition stemming from this hypertension." (Tr. 22). In regards to Fuentes's obesity, the ALJ noted that "no treating or examining medical source has specifically attributed additional or cumulative limitations to the claimant's obesity." (Tr. 23).

At step four, the ALJ found Fuentes could not perform any past relevant work because of his medical limitations and RFC. (Tr. 24). Fuentes was 38 years old at the alleged onset date, placing him in the 18-49 "younger individual" age category. (Tr. 24). Fuentes cannot communicate in English and "is considered the same way as an individual who is illiterate in English." (Tr. 24). The ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 24). The ALJ concluded that "the claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2010, through the date of this decision." (Tr. 25).

## DISCUSSION

The sole question before this court is whether there is substantial evidence to support the ALJ's determination at step five in the sequential evaluation process contained in 20 C.F.R. § 404.1520 that, based on Fuentes's age, education, work experience, and

RFC, there was work in the national economy that he could perform, thus rendering him not disabled under the Act.

Fuentes makes several unwieldy and poorly supported claims in his memorandum[1]; however, he seems to argue (1) the appeals council erred in refusing to review the ALJ's decision "in spite of having received additional pertinent medical evidence which supported the plaintiff's complaints since before the [date last insured]" (Pl. Mem 2); (2) the ALJ's decisions was "predicated in Grid Rule 202.16 which considers the plaintiff is able to do a full range of light efforts and communicate in English" when Fuentes cannot speak English and cannot do a full range of light efforts (Pl. Mem. 2); (3) the ALJ's first hypothetical to the VE "was unspecific and suggestive: assuming claimant can do light work" (Pl. Mem. 3); (4) the ALJ gave more weight to the non-examining physicians than to the examining physicians (Pl. Mem. 4); and (5) there is "no opinion of record that rebuts the assessments of these three physicians that the plaintiff is unable to work." (Pl. Mem. 5). These will each be addressed in turn.

The function of weighing evidence and determining if a person meets the statutory definition of disability is the Commissioner's. 20 C.F.R. § 404.1527(d). It is the Commissioner's responsibility to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts in the evidence. *Ortiz*, 955 F.2d at 769; *Evangelista* v. *Sec'y of Health & Human Servs.*, 826 F.2d 136, 141 (1st Cir. 1987). Generally, more weight is given to the opinion of a treating source if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ may reject the conclusions of a treating physician regarding disability where contradictory medical

---

[1] Fuentes's memorandum is poorly organized and contains many errors: switching gender pronouns for Mr. Fuentes, calling Mr. Fuentes by the wrong name, stating incorrectly that Mr. Fuentes used to be a welder, incorrectly stating facts, making assertions without supporting citations to the record, and frequently making incorrect cites.

evidence appears in the record. *See Arias* v. *Comm'r of Social Security*, 70 Fed. Appx. 595, 598 (1st Cir. 2003) (citations omitted).

### *Appeals Council Erred*

First, Fuentes alleges that it was an "egregious error of law" when "the Appeals Council refused to review the ALJ's decision in spite of having received additional pertinent medical evidence which supported the plaintiff's complaints since before the [date last insured]." (Pl. Mem. 2). Fuentes does not cite to the record to support this contention or point out what this additional medical evidence is. An examination of the record does not illuminate what additional pertinent medical evidence Fuentes is referring to. Because he does not support this contention with citations to the record, explain why it was error for the Appeals Council to have decided not to review the ALJ's decision, and the record does not support this allegation, this argument is waived. *See United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

### *Incorrect Grid*

Fuentes also alleges that it was an "egregious error of law" that the ALJ's decision was "predicated in Grid Rule 202.16 which considers the plaintiff is able to do a full range of light efforts and communicate in English" when Fuentes can neither speak English nor do a full range of light efforts. (Pl. Mem. 2). Fuentes makes two incorrect cites to the record to support this claim. First he cites to Tr. 32-51 to support that "[t]he decision is predicated in Grid Rule 202.16 which considers that plaintiff is able to do a full range of light efforts and communicate in English." (Pl. Mem. 2). Tr. 32-51 contains the testimony of Fuentes, the medical expert, and the vocational expert, as well as several pages of case development sheets. (Tr. 32-51). Nowhere in those pages is Grid Rule 202.16 mentioned. In addition, Fuentes cites to Tr. 57 to show that "[i]t is clear that the plaintiff is unable to communicate in English . . . ." (Pl. Mem. 2). Tr. 57 is a case development sheet. (Tr. 57). It is correct that

Mr. Fuentes does not speak English and the ALJ found that "[t]he claimant is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English (20 CFR 404.1564)." (Tr. 24.) Because Fuentes does not support this contention with accurate citations to the record, show that the ALJ actually did what was alleged, and because the record contradicts Fuentes, this argument is also waived. *See Zannino*, 895 F.2d at 17 ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

### *Hypothetical Question*

Next, Fuentes alleges that the ALJ's first hypothetical to the VE "was unspecific and suggestive: assuming claimant can do light work." (Pl. Mem. 3). Fuentes does not cite the record in support of this allegation.

"The ALJ [is] entitled to credit the vocational expert's testimony as long as there [is] substantial evidence in the record to support the description of [the] impairments given in the . . . hypothetical." *Berrios Lopez* v. *Sec'y of Health & Human Servs.*, 951 F.2d 427, 429 (1st Cir. 1991). A VE's testimony is relevant to the claimant's disability determination insofar as the hypothetical question posed to the VE accurately reflects the claimant's functional work capacity. *See Arocho* v. *Sec'y of Health and Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982).

Fuentes's allegation that the first hypothetical posed to the VE was "unspecific and suggestive" is contradicted by the record. The first hypothetical posed by the ALJ was "I ask you, a hypothetical person of the same age, vocational profile, work experience and education as the claimant. Who is able to lift and carry, push and pull 20 pounds occasionally, ten frequently. Can remain seated for six hours during a period of eight hour working day with normal breaks and standing and/or walking four hours in that period. Could that person perform any of the past relevant jobs?" (Tr. 45-6). Later hypotheticals included the postural and environmental limitations that Fuentes has. (Tr. 47).

There is substantial evidence in the record to support Fuentes can do light work, and in particular this question incorporates the functional limitations laid out by the testimony of the medical expert, Dr. Anaya. (Tr. 40-45). Dr. Anaya's assessment is supported by the medical record. The ALJ credited Fuentes's treating physician's (Dr. Solla's) illegible report that Fuentes cannot lift or carry heavy objects. (Tr. 21, 517-19). This is reflected in the hypothetical that the person can only lift 20 pounds occasionally. (Tr. 45-6). It is also in line with Dr. Zaya's case analysis which has the same functional limitations as those listed in the hypothetical posed to the VE. (Tr. 535-48). In addition, this hypothetical does not contain the suggestive statement that Fuentes alleges.

### *Inappropriate Weight to Non-Examining Physicians*

Fuentes also alleges that the ALJ erred by giving more weight to the non-examining physicians than to the examining physicians (Pl. Mem. 4). He alleges that "the opinions of the treating physicians are all consistent and supportive of one another and, as such, were entitled to substantial weight." (Pl. Mem. 4). Fuentes does not cite to the record to support this allegation.

Generally, more weight is given to the opinion of a treating source if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The ALJ may reject the conclusions of a treating physician regarding disability where contradictory medical evidence appears in the record. *See Arias*, 70 Fed. Appx. at 598 (citations omitted).

Upon examination of the record, there are two treating physicians: Dr. Medina and Dr. Solla. Dr. Solla's report is handwritten and illegible. (Tr. 517-19). The ALJ's written opinion states that Dr. Solla's report says "that the claimant was unable to lift or carry heavy objects." (Tr. 23). The ALJ gave "significant weight" to this report. (Tr. 23). None of Dr. Medina's reports list any significant restrictions or limitations. (Tr. 462-87). Fuentes's allegations are partially supported by the record-the opinions of the treating

physicians are supportive of each other-but neither find that Fuentes is unable to work. His allegation that the ALJ gave more weight to the non-examining physicians than to the examining physicians is not supported by the record and is therefore rejected.

### *No Rebuttal of Three Physicians' Assessments*

Finally, Fuentes argues that there is "no opinion of record that rebuts the assessments of these three physicians that the plaintiff is unable to work." (Pl. Mem. 5). Fuentes does not cite to the record to support this allegation or identify what assessments he is referring to. There is no medical document in the record that says Fuentes cannot work. Therefore, this allegation is baseless and is rejected.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 16th day of June, 2017.

> *S/ Bruce J. McGiverin*
> BRUCE J. MCGIVERIN
> United States Magistrate Judge